**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE JAMES MADISON PROJECT      *
1250 Connecticut Avenue, NW      *
Suite 200      *
Washington, D.C.  20036      *
     *
     and      *
     *
SHANE HARRIS      *
The Wall Street Journal      *
1025 Connecticut Avenue, NW      *
Suite 800      *
Washington, D.C. 20036      *
     *
     Plaintiffs,      *
     *
     v.      *      Civil Action No. 17-27
     *
DEPARTMENT OF STATE      *
2401 E Street, NW      *
Washington, D.C. 20037      *
     *
     and      *
     *
CENTRAL INTELLIGENCE AGENCY      *
Washington, D.C. 20505      *
     *
     and      *
     *
OFFICE OF DIRECTOR OF      *
NATIONAL INTELLIGENCE      *
Washington, D.C. 20511      *
     *
     and      *
     *
DEPARTMENT OF DEFENSE      *
1000 Defense Pentagon      *
Washington, D.C. 20301-1000      *
     *
     Defendants.      *
     *

*   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records improperly withheld from the plaintiffs The James Madison Project and Shane Harris by the defendants Department of State, Central Intelligence Agency, Office of Director of National Intelligence, and Department of Defense (as well as their subordinate entities).

## JURISDICTION

1.   This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.   Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.   Plaintiff The James Madison Project ("JMP") is a non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy, as well as educating the public on issues relating to intelligence and national security.

4.   Plaintiff Shane Harris ("Harris") currently serves as a Senior Writer for The Wall Street Journal, covering national security topics. He received the New York Public Library's Helen Bernstein Book Award for his book, The Watchers, and was the 2010 winner of the 2010 Gerald R. Ford Prize for Distinguished Reporting on National Defense. His most recent book is entitled "@War: The rise of the Military-Internet Complex."

5.   Defendant Department of State ("State") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

6.   Defendant Central Intelligence Agency ("CIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

7.   Defendant Office of the Director of National Intelligence ("ODNI") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action.

8.   Defendant Department of Defense ("DoD") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiffs which are the subject of this action. DoD controls – and consequently serves as the proper party defendant for litigation purposes for – the National Security Agency ("NSA").

**FACTUAL BACKGROUND**

9.   This lawsuit is brought under the Freedom of Information Act ("FOIA") and seeks to provide clarity regarding the nature of the U.S. Government's communications with the Government of Ecuador with respect to Julian Assange ("Mr. Assange"), an Australian national and the Editor in Chief of WikiLeaks.

10. Mr. Assange has been living in the Embassy of Ecuador in London since August 2012, having been approved for political asylum. *http://www.telegraph.co.uk/ news/worldnews/wikileaks/11681502/Why-is-Julian-Assange-still-inside-the-embassy-of-Ecuador.html* (last accessed October 20, 2016). Towards the end of the U.S. Presidential

election, WikiLeaks starting publishing on a daily basis copies of hacked e-mails from the

private e-mail account of John Podesta, the Chairman of former Secretary of State Hillary

Clinton's Presidential campaign. WikiLeaks has an estimated 50,000 total e-mails from

that private e-mail account. *http://www.politico.com/live-blog-updates/2016/10/john-*

*podesta-hillary-clinton-emails-wikileaks-000011* (last accessed October 20, 2016).

11. Mr. Assange's willingness to publish the hacked e-mails of Mr. Podesta, despite

indications that they were provided to him by the Russian Government, see *https://*

*motherboard.vice.com/read/how-hackers-broke-into-john-podesta-and-colin-powells-*

*gmail-accounts?trk_source= homepage-lede* (last accessed October 20, 2016), led to

accusations that he was directly or indirectly working on behalf of the Russian

Government to influence the U.S. Presidential election. *http://www.cnn.com*

*/2016/10/13/politics/russia-us-election/* (last accessed October 20, 2016). The daily

disclosure of Mr. Podesta's hacked e-mails by WikiLeaks was criticized by Secretary

Clinton's campaign as "Russian propaganda". *https://www.theguardian.com/us-*

*news/2016/oct/11/clinton-campaign-wikileaks-hack-russia-donald-trump* (last accessed

October 20, 2016). Secretary Clinton's campaign accused WikiLeaks (and, by extension,

the Russian Government) of attempting to use the e-mails to support her Republican

opponent, Donald Trump. *http://www.chicagotribune.com/news/nationworld/politics/ct-*

*hillary-clinton-hacked-emails-russia-20161012-story.html* (last accessed October 20,

2016).

12. Mr. Assange has continued to deny that the Russian Government was the source of the leaks. *http://www.wearegreenbay.com/news/politics/wikileaks-assange-russia-didnt-give-us-emails/635708319* (last accessed January 5, 2017).

13. On October 17, 2016, WikiLeaks confirmed that Ecuador had cut off Mr. Assange's internet access. *http://www. newser.com/story/232700/wikileaks-ecuador-cut-off-julian-assanges-internet.html* (last accessed October 20, 2016). State has denied that Secretary of State John Kerry or anyone else at the agency requested that Ecuador take such action against Mr. Assange. *http://thehill.com/policy/ cybersecurity/301527-state-dept-denies-kerry-asked-ecuador-to-halt-clinton-wikileaks-dumps* (last accessed October 20, 2016). However, news reports continue to indicate that the U.S. Government pressured the Government of Ecuador to cut off Mr. Assange's access to the Internet. *http://www.nbcnews.com/news/us-news/u-s-urged-ecuador-act-against-assange-n669271* (last accessed October 20, 2016).

## COUNT ONE

14. By letter dated October 21, 2016, the plaintiffs, JMP and Harris (referred to jointly as "the Requesters"), submitted to State a FOIA request. The FOIA request specifically sought copies of records, including cross-references, memorializing communications between U.S. Government officials and officials from the Government of Ecuador concerning Mr. Assange. The Requesters indicated that State could limit the timeframe of its search for records from January 1, 2016, up until the date of acceptance of the request. The Requesters further clarified that the scope of State's search should not be limited to State-originated records.

15. In the FOIA request, the Requesters pre-emptively waived any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. The Requesters similarly waived any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

16. In terms of all other third parties who work for the U.S. Government and whose names appear in records responsive to this request, the Requesters explained in detail that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described as falling within the scope of the FOIA request. In terms of Mr. Assange himself, the Requesters similarly described in detail the basis for their conclusion that the public interest in records responsive to the FOIA request outweighed Mr. Assange's categorical privacy interests. Relying upon the public interest aspect outlined regarding third party privacy interests, the Requesters stated that they were also seeking a waiver of fees or, at a minimum, a reduction in fees.

17. As a final matter, the FOIA request explained that the Requesters were seeking expedited processing. The Requesters noted that the ongoing daily production of the hacked e-mails was continuing to influence the American public in the final weeks of the Presidential election, and that any efforts by the U.S. Government to curtail WikiLeaks efforts to publish those e-mails reflected the seriousness with which it took the matter.

18. By letter dated October 27, 2016, State acknowledged receipt and assigned the FOIA request Case Control Number F-2016-13960. State indicated that the fee waiver request had been granted. However, State stated that the request for expedited processing

had been denied.

19. By letter dated November 7, 2016, the Requesters submitted an administrative appeal of the denial of expedited processing.

20. By letter dated November 18, 2016, State reaffirmed the denial of expedited processing.

21. To date, no substantive response has been received by the Requesters from State regarding the FOIA request. The Requesters have therefore constructively exhausted their administrative remedies.

22. The Requesters have a legal right under the FOIA to obtain the information they seek, and there is no basis for the denial by State of said right.

### COUNT TWO

23. By letter dated October 21, 2016, the Requesters submitted to the CIA a FOIA request.

24. The Requesters reallege paragraphs 14-17, as the scope of the request to CIA, as well as the issues of categorical privacy interests, fee waivers, and expedited processing, were addressed in identical fashion in the CIA request as was done in the request to State.

25. By letter dated October 26, 2016, the CIA acknowelged receipt and assigned the FOIA request Reference No. F-2017-00115. In its letter, the CIA refused to confirm or deny the existence or nonexistence of records responsive to the FOIA request, and denied the request in reliance upon FOIA exemptions (b)(1) and (b)(3).

26. By letter dated November 8, 2016, the Requesters filed an administrative appeal.

27. By letter dated November 17, 2016, CIA acknowledged receipt of the administrative appeal.

28. To date, no substantive response has been received by the Requesters from CIA regarding the FOIA appeal. The Requesters have therefore constructively exhausted their administrative remedies.

29. The Requesters have a legal right under the FOIA to obtain the information they seek, and there is no basis for the denial by CIA of said right.

## COUNT THREE

30. By letter dated October 21, 2016, the Requesters submitted to ODNI a FOIA request.

31. The Requesters reallege paragraphs 14-17, as the scope of the request to ODNI, as well as the issues of categorical privacy interests, fee waivers, and expedited processing, were addressed in identical fashion in the ODNI request as was done in the request to State.

32. By letter dated November 3, 2016, ODNI acknowledged receipt and assigned the FOIA request ODNI Case No. DF-2017-00019. In its letter, ODNI stated that its searches found no responsive records.

33. By letter dated November 10, 2016, the Requesters filed an administrative appeal of ODNI's adverse determination.

34.  To date, no substantive response has been received by the Requesters from ODNI regarding the FOIA appeal. The Requesters have therefore constructively exhausted their administrative remedies.

35. The Requesters have a legal right under the FOIA to obtain the information they seek, and there is no basis for the denial by ODNI of said right.

**COUNT FOUR**

36. By letter dated October 21, 2016, the Requesters submitted to the NSA a FOIA request.

37. The Requesters reallege paragraphs 14-17, as the scope of the request to NSA, as well as the issues of categorical privacy interests, fee waivers, and expedited processing, were addressed in identical fashion in the NSA request as was done in the request to State.

38. By letter dated November 1, 2016, NSA acknowledged receipt and assigned the FOIA request Case No. 100004. In its letter, NSA stated that its searches found no responsive records.

39. By letter dated November 8, 2016, the Requesters filed an administrative appeal of NSA's adverse determination.

40. By letter dated November 23, 2016, NSA acknowledged receipt of the administrative appeal and assigned it Appeal No. 5009.

41. To date, no substantive response has been received by the Requesters from NSA regarding the FOIA appeal. The Requesters have therefore constructively exhausted their administrative remedies.

42. The Requesters have a legal right under the FOIA to obtain the information they seek, and there is no basis for the denial by NSA of said right.

WHEREFORE, plaintiffs The James Madison Project and Shane Harris pray that this Court:

(1) Orders the defendant federal agencies to disclose the requested records in their entirety and make copies promptly available to the plaintiffs;

9

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4) grant such other relief as the Court may deem just and proper.

Date:   January 5, 2017

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiffs